UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MARC STOUT, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-468 |
| ) | |
| SHERIFF ROGER L. HARRIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendant Sheriff Roger L. Harris ("Sheriff Harris"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves this Court to dismiss, with prejudice, all claims against it in the Amended Complaint ("Complaint") filed by Plaintiffs Marc Stout ("Marc") and Robert Stout ("Robert") (collectively, "Plaintiffs").

**INTRODUCTION**

Plaintiffs bring a claim under 42 U.S.C. § 1983 alleging that Sheriff Harris violated their constitutional rights when deputies under Sheriff Harris' command forced Plaintiffs to identify themselves. In each instance, the deputies had, at minimum, a reasonable suspicion to believe Plaintiffs were committing a crime. In 2013 (the "2013 Incident"), Robert was attempting to leave a Walmart with merchandise and refusing to provide the store associate with proof of purchase of that merchandise. Deputies commanded Robert to provide identification as part of their investigation. The statute of limitations for this claim has run, and the Court should not consider it. In 2020 (the "2020 Incident"), Plaintiffs were both involved in an incident resulting in multiple criminal charges, some of which stemmed from Plaintiffs' refusal to provide identification to the arresting deputies. In 2021 (the "2021 Incident"), Marc was caught placing bags of white powder

1

packaged to look like narcotics on the floor of a shopping mall. Deputies detained him while they investigated the substance; during this detention, Marc identified himself.

The law is well-settled: once a law enforcement officer has a reasonable suspicion of a crime, then the official may require the suspect to identify himself. The fact that Virginia does not have a law explicitly allowing officers to stop and identify, or that Virginia's obstruction of justice law has been interpreted to exclude a refusal to identify oneself as a crime is of no relevance. What is reasonable under the Fourth Amendment is dictated by Fourth Amendment jurisprudence, not state law. If state law had any effect on the Fourth Amendment, then an arrest could be constitutionally valid in one state but not another. This inconsistency would be antithetical to underlying principles of Fourth Amendment jurisprudence, which seeks to impose a purely objective standard applicable everywhere.

Even if, however, compulsory identification was a violation of the Fourth Amendment, Plaintiffs have failed to plead sufficient facts to attach liability to Sheriff Harris. To be liable for the actions of his deputies as a supervisor, Sheriff Harris must have been deliberately indifferent to a severe and pervasive risk of constitutional injury. For municipal liability to attach, Plaintiff must show that the complained of behavior was a policy, practice, or custom. Under either theory of liability, plaintiffs cannot point to a smattering of isolated events as evidence of a pervasive practice. That is precisely what Plaintiffs seek to do here. They use three incidents, spread over approximately eight years as evidence that Sheriff Harris permitted his deputies to regularly engage in an unconstitutional practice. This is precisely the type of evidence the Court should not accept for either supervisory or municipal liability.

For these reasons, the Court must dismiss Plaintiffs' Complaint with prejudice.

## ALLEGATIONS IN THE AMENDED COMPLAINT[1]

Plaintiffs have filed the Complaint against Sheriff Harris (Am. Compl. at 2). They purport to bring a claim under 42 U.S.C. § 1983 alleging that Sheriff Harris violated their Fourth Amendment right to be free from unreasonable seizures. (Am. Compl. at 3). To support their allegation, Plaintiffs cite three incidents in which they were unlawfully seized.

On or about December 24, 2013, Plaintiffs allege that one of Sheriff Harris' deputies forcibly identified Robert inside a Walmart after Robert refused, upon request of a Walmart employee, to provide a receipt proving he purchased the merchandise in his possession. (Am. Compl. ¶ 1). Plaintiffs allege that the 2020 Incident involved their arrest by Sheriff Harris' deputies for, among other things, obstruction of justice for refusing to identify themselves while being detained by deputies. (Am. Compl. ¶ 3). Marc was tried for his obstruction charge. (Am. Compl. ¶ 5). The 2020 incident is the subject of a lawsuit pending before this Court. (Am. Compl. ¶ 6). *See Stout v. Harris*, 3:21-cv-399 (Richmond Division) (Gibney, J.). After this allegedly unconstitutional forced identification, Marc filed a complaint with Sheriff Harris. (Am. Compl. ¶ 8). The 2021 Incident allegedly involved forcible identification by Sheriff Harris' deputies following Marc's detention during an investigation into a suspected drug crime. (Am. Compl. ¶ 9). This incident is the subject of a pending lawsuit in the United States District Court for the Eastern District of Virginia, Alexandria Division. (Am. Compl. ¶ 12). *See Stout v. Harris*, 1:21-cv-493 (Alexandria Division) (Hilton, J.).[2]

Plaintiffs allege that these three incidents, spread out over the course of nearly eight years,

---

[1] Sheriff Harris recites the allegations set forth in the Complaint only for purposes of this motion and does not admit their truth.

[2] Defendants in all of these cases intend to file a motion to consolidate these cases.

show a persistent and widespread practice of charging individuals who refuse to identify themselves with obstruction of justice. (Am. Compl. ¶ 15). They allege that forced identification is a constitutional violation. (Am. Compl. ¶ 16.)

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the Court "should accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). As the Supreme Court of the United States noted, a complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Furthermore, even assuming the factual allegations in the complaint are true, there "must be enough to raise a right to relief above the speculative level." *Id*. In addition, the Court "need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *accord Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009). Moreover, "elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Accordingly, the Complaint must be dismissed if it does not allege "enough *facts* to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 570 (emphasis added).

## ARGUMENT

**I.      The 2013 Incident is time barred.**

The 2013 Incident occurred almost eight years ago. (Am. Compl. ¶ 1). Section 1983 borrows the forum state's law governing general personal injury claims. *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that "§ 1983 claims should borrow the general or residual statute [of limitations] for personal injury actions.") Relatedly, Virginia law characterizes unlawful seizures as a personal injury. *Cramer v. Crutchfield*, 469 F. Supp. 949, 952 (E.D. Va. 1980) (citing *McClannan v. Chaplain*, 136 Va. 1, 116 S.E.2d 495, 499 (1923)). Thus, the two-year limitations period set forth in Va. Code § 8.01-243(A) would apply to this action. *Id.* Courts in Virginia have consistently applied this statute of limitations to § 1983 claims. *Id.* (citing *Almond v. Kent*, 495 F.2d 200, 203 (4th Cir. 1972); *Van Horn v. Lukhard*, 392 F. Supp. 384, 391 (E.D. Va. 1975)). *See also Harrison v. Prince William Cnty. Police Dept.*, 640 F. Supp. 2d 688, 700 (E.D. Va. 2009) (finding that the two-year personal injury limitations period found in Va. Code § 8.01-243 applies to § 1983 actions).

It is unequivocal: Plaintiffs may not recover for alleged injuries occurring more than two years before the commencement of this action. They, however, ask this Court to look back to events that occurred over seven years ago as a basis for their recovery. This is improper, as the statute of limitations bars these claims. Therefore, the Court must dismiss Plaintiffs' claims arising out of the 2013 Incident.

**II.     Compulsory identification is constitutional where, as alleged here, the seizures are predicated upon reasonable suspicion of criminality.**

Plaintiffs' lawsuit is founded upon the mistaken belief that law enforcement officers may never require a criminal suspect to identify himself. This is contrary to established law.

Officers may require an individual to identify himself when the officer has reasonable

suspicion that the individual was involved in criminal activity. The Supreme Court of the United States discussed this issue in *Hiibel v. Sixth Judicial District Court of Nevada, Humbolt Cnty.*, 542 U.S. 177 (2004). Writing for the majority, Justice Kennedy found that "[a]sking questions is an essential part of police investigations." *Id*. at 185. *Terry v. Ohio*, 392 U.S. 1 (1968), found that when there is a reasonable articulable suspicion of criminal activity, police officers may go further than simply asking questions, they can stop a suspected criminal and investigate further. *Hiibel*, 542 U.S. at 185. These stops must be "justified at [their] inception, and…reasonably related in scope and circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. The Supreme Court has repeatedly held that these investigations can include questions concerning a suspect's identity. *Hiibel*, 542 U.S. at 186 (collecting cases). This is because obtaining a suspect's name "serves an important government interest." *Id*. Knowing a suspect's name may assist the officer in assessing whether the suspect is dangerous, wanted for other crimes, or innocent of the suspected behavior. *Id*.[3] Thus, the principles articulated in *Terry* permit law enforcement officials to require suspects to identify themselves during the course of an investigatory stop. *Id*. at 187-88. Justice Kennedy further elaborated that the "threat of criminal sanction" for not providing identification "helps ensure that the request for identity does not become a legal nullity." *Id*. The Court left little room for doubt, ruling that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstance justifying the stop." *Id*. at 188. Put differently: if an officer has reasonable suspicion the individual is involved with criminal activity, the officer may force the suspect to identify himself.

---

[3] In the present case, it would allow Sheriff Harris' deputies to know they are dealing with two individuals who intentionally antagonize law enforcement in hopes of obtaining a quick payday through a frivolous and baseless civil rights lawsuit.

The Fourth Circuit Court of Appeals recently reaffirmed these principles in *Wingate v. Fulford*, 987 F.3d 299 (4th Cir. 2021). There, the Fourth Circuit held that police cannot use a threat of criminal sanction to compel identification during a *voluntary* encounter. *Id*. at 310. The Court, however, also reiterated the holding in *Hiibel*: officers may compel identification through the threat of criminal sanction when conducting a *Terry* stop. *Id*. at 309-10.

With these principles in mind, Plaintiffs have not and cannot state a plausible claim for relief. Under the well-pled facts, all three incidents involve investigatory stops predicated upon reasonable suspicion. Officers in the 2013 Incident would have reasonable suspicion that Robert was attempting to steal merchandise due to his refusal to provide proof of purchase. In the 2020 Incident, Plaintiffs have alleged that they were charged with *other crimes* beyond obstruction of justice for refusing to identify themselves. *See* **Exhibit 1**.[4] Plaintiffs do not impugn the officer's probable cause for these additional offenses. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (overruling the "closely related" doctrine and holding that *any* articulable probable cause supports an arrest, even if different from the grounds stated by the arresting officer). Furthermore, Marc alleges that he faced trial for the obstruction of justice charge that stemmed from his refusal to identify himself, reflecting that the Virginia judiciary found probable cause to move forward with trial, and Robert went to trial for felony assault on a law enforcement officer. Ex. 4. *See Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012) (holding that grand jury indictments subsequent to arrest constitute *de facto* evidence of probable cause).

For the 2021 Incident, Plaintiffs admit that Marc was detained on suspicion that Marc had

---

[4] The Court may take judicial notice of court filings related to Plaintiffs without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2012).

thrown bags of white powder believed to be a controlled substance on the floor of a mall. *Stout v. Harris*, 1:21-cv-493, ECF No. 1 at ¶ 4 (hereinafter "*Harris* Compl.").[5] Plaintiffs attempt to deflect from this fact by alleging that possessing an imitation controlled substance is not a crime. This, however, ignores the fact that there is no evidence the officers knew the bags of white powder in Marc's possession were imitation controlled substance. Furthermore, possessing an imitation controlled substance with the intent to distribute it *is* a crime in Virginia. Va. Code § 18.2-48. Here, Marc was in a public place, with a bag of white powder in plain view, distributing it to whomever may be willing to pick it up. The only inference the Court can draw from these facts is that the deputies, at minimum, had some reasonable suspicion that Marc was involved in the distribution of drugs, meaning they had grounds to compel him to identify himself.

For these reasons, the Court must dismiss Plaintiffs' Complaint with prejudice.

## III. The Fourth Amendment is not circumscribed by state law.

Plaintiffs' entire Complaint is based on the mistaken belief that law enforcement officers cannot forcibly identify individuals suspected of committing a crime. Plaintiffs have previously conceded that police can seize a suspect to identify him once the officer has reasonable suspicion or probable cause. Pls.' Br. in Opp. Mot. to Dismiss ¶¶ 16-20 (ECF No. 13). They, however, argue that this right is somehow restricted by the absence of a Virginia statute giving law enforcement permission to identify criminal suspects. Pls.' Br. in Opp. Mot. to Dismiss ¶ 22. This is legal error. What is reasonable under the Fourth Amendment is not affected by state law. *See Virginia v. Moore*, 533 U.S. 164 (2008) (holding that what is reasonable under the Fourth Amendment does not change based on the statutory laws of the state where the search or seizure

---

[5] The Court may also take judicial notice of admissions Plaintiffs have made in other lawsuits without converting this motion to one for summary judgment. *See* N. 4, *supra*.

occurred.)6

occurred.)[6]

It is well-settled that officers may require a suspect to identify himself once the officer has reasonable suspicion a crime has occurred, may be occurring, or is about to occur. *See Adams v. Williams*, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, *in order to determine his identity* or maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.") (citing *Terry*, 392 U.S. at 21-22). In *Hayes v. Florida*, 470 U.S. 811 (1985), the Supreme Court of the United States summarized the jurisprudence on this issue succinctly. *Id*. at 816. The Court found that requiring a suspect to identify himself is well within the parameters of a lawful *Terry* stop. *Id*. (citing *Adams*, 407 U.S. at 146; *United States v. Hensley*, 469 U.S. 221, 229, 232, 234 (1985)). Similarly, the Fourth Circuit has found that a suspect's refusal to identify herself during a lawful *Terry* stop was sufficient to create probable cause for arrest. *Alston v. Town of Chapel Hill*, 885 F.2d 864 (4th Cir. 1989).

The holdings in *Hiibel* and *Wingate* affirm the constitutionality of stop-and-identify statutes. Inherent in these rulings is that compelling identification of a criminal suspect is reasonable under the Fourth Amendment. What is reasonable under the Fourth Amendment takes root in the Constitution, not state statutes. *Moore*, 553 U.S. at 172 (holding that whether a search or seizure is reasonable has never been affected by state or local law or practice) (citing *California v. Greenwood*, 486 U.S. 35 (1988); *Whren v. United States*, 517 U.S. 806 (1996)). Thus, it is irrelevant whether Virginia or Spotsylvania County has a stop-and-identify statute. Under the Fourth Amendment, law enforcement officials have the ability to compel a suspect to identify himself once they have reasonable suspicion that criminal activity is afoot.

---

[6] Justice Scalia's decision in *Moore* undermines Plaintiffs' reliance on a nonbinding attorney general opinion regarding statutory law in Virginia as establishing their Fourth Amendment rights.

In the present case, Plaintiffs have pled facts that clearly demonstrate Sheriff Harris' deputies, at minimum, were conducting *Terry* stops. In the 2013 Incident, Plaintiffs admit that Robert was attempting to leave a Walmart with merchandise without providing proof of purchase. The deputies, at the very least, had reasonable suspicion a theft was occurring. In the 2020 Incident, Plaintiffs admit they were arrested for obstruction of justice and other crimes. Implicit in this admission is that the deputies had probable cause to arrest Plaintiffs for those other crimes. With probable cause comes the ability of Sheriff Harris' deputies to compel Plaintiffs to identify themselves. In the 2021 incident, Plaintiffs admit that Marc was in possession of a substance that resembled drugs. This gave the deputies, at minimum, reasonable suspicion to detain Marc while they investigated a possible drug crime. This investigation includes ascertaining Marc's identity. Thus, in all three instances, the deputies had sufficient evidence to require Plaintiffs to identify themselves under the Fourth Amendment. Therefore, the Complaint must be dismissed with prejudice.

## IV. Plaintiffs have failed to articulate an actionable claim for supervisory liability.

Even if Spotsylvania County Sheriff's deputies had violated Plaintiffs constitutional rights, the Court must dismiss their claim with prejudice because they have failed to allege sufficient facts to show supervisory liability under § 1983. The gravamen of Plaintiffs' claims is that deputies allegedly violated Robert and Marc's constitutional rights times over the course of nearly eight years. They allege that these three supposed violations should result in liability for Sheriff Harris.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Fourth Circuit Court of Appeals created a three-part test to determine whether supervisory liability exists under § 1983. First, Sheriff Harris must have actual or constructive knowledge of his deputies' conduct that "posed 'a *pervasive* and unreasonable risk' of constitutional injury to citizens." *Id*. at 799 (citing *Miltier v. Beorn*, 896 F.2d

848, 854 (4th Cir. 1990); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984); *Wellington v. Daniels*, 717 F.2d 923 936 (4th Cir. 1983)) (emphasis added).  Second, Sheriff Harris' response to such knowledge must be "so inadequate as to show 'deliberate indifference or tacit authorization of the alleged offensive practices." *Id*.  Third, there must be an identifiable causal connection between such indifference and the constitutional injuries allegedly suffered by Plaintiffs. *Id*.  In short, supervisory liability can only attach if Plaintiffs plead and show that Sheriff Harris knew of a widespread unconstitutional practice by his deputies and did nothing to stop it.  This is an incredibly difficult burden to meet, and Plaintiffs must do more than plead a *few isolated incidents*. *Slakan*, 737 F.2d at 373.  The Complaint does not meet this high burden.

In pleading the first prong of the *Shaw* test, Plaintiffs must allege that the conduct complained of was so widespread or frequent that Sheriff Harris knew or should have known there was an unreasonable risk of constitutional violations.  *Shaw*, 13 F.3d at 799.  Plaintiffs have failed to do this.  Indeed, Plaintiffs have not even pled a single constitutional violation.  *See* Sec. II, *supra*.  Even presuming the deputies somehow violated Plaintiffs' constitutional rights in each particular instance, the practice of identifying criminal suspects after deputies have reasonable suspicion a crime has been committed does not pose an unreasonable risk of constitutional harms. *See, e.g., Adams*, 407 U.S. at 146.  Furthermore, these three alleged violations occurred over a nearly eight-year span.  Thus, Plaintiffs have made no factual allegations regarding widespread conduct by Spotsylvania County Sheriff's deputies.  Plaintiffs merely conclude that based on these three interactions, the practice must be widespread.  The Court should pay no heed to these conclusory allegations. *E. Shore Mkts., Inc.*, 213 F.3d at 180.

For the second prong of the *Shaw* test, the Fourth Circuit has defined deliberate indifference as "continued inaction in the face of documented widespread abuses." *Slakan*, 737 F.2d at 373.

11

This is an incredibly difficult burden to bear. Claimants cannot merely point to a sparse constellation of isolated incidents because "supervisors cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Id*. (citing *Orpiano v. Johnson*, 632 F.2d 1086, 1101 (4th Cir. 1980). Here, Plaintiffs identify three instances over seven years apart in which they were admittedly involved in criminal activity. These three temporally remote incidents are the precise type of isolated incidents the Fourth Circuit has prohibited as evidence showing a widespread practice. *Id*. Thus, Plaintiffs have failed to show Sheriff Harris was deliberately indifferent to a widespread practice that posed an unreasonable risk of constitutional harm.

To meet the third prong, Plaintiffs must plead that there was an "affirmative causal link" between the supervisor's inaction and the harm Plaintiffs suffered. *Shaw*, 13 F.3d at 799 (citing *Slakan*, 7373 F.2d at 376). This can take one of two forms: a policy that leads to the complained of injury, or the natural consequences of Sheriff Harris' inaction. *Slakan*, 737 F.3d at 376. Here, Plaintiffs have only provided conclusory allegations that Sheriff Harris has a policy of wrongfully forcing citizens to identify themselves. These allegations are not sufficient to maintain a claim. Additionally, Plaintiffs have failed to allege sufficient facts to allow this Court to determine that their alleged injuries are the natural consequences of Sheriff Harris' deliberate indifference to known, pervasive constitutional abuses. This is because Plaintiffs have both failed to allege any constitutional violation or that it was pervasive. Thus, Plaintiffs have failed to allege a cognizable claim for supervisory liability, and the Court must dismiss the Complaint with prejudice.

**V.    Plaintiffs have failed to allege a claim for municipal liability.**

Previously, Plaintiffs have attempted to frame this claim as one for municipal liability. Their claim still fails under this framework.

Municipalities can be liable for § 1983 violations if a policy, practice, or custom deprives an individual of his or her constitutional rights. *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 690 (1978). These claims, however, cannot be based solely on a theory of *respondeat superior*. *Id*. at 691.  It is clear that Congress only intended § 1983 liability where "deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown*, 520 U.S. 397, 400 (1997) (citing *Monell*, 436 U.S. at 694).  Thus, a threshold requirement for a municipal liability claim under § 1983 is that there must be a constitutional violation. *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir. 1999).  As discussed above, Plaintiffs have failed to plead a constitutional violation.  This is fatal to their municipal liability claim, and the Court should dismiss the Complaint with prejudice.

Plaintiffs must also show any alleged violation was a result of Sheriff Harris' policy, practice or custom. *Monell*, 436 U.S. at 690.  A policy, practice, or custom can exist in four ways: (1) through an express policy; (2) through the actions of an individual with final policymaking authority; (3) through omissions by the final policymaking authority that show a deliberate indifference to the rights of citizens; or (4) through a practice so widespread that it essentially carries with it the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Establishing a municipal liability claim is a high bar. *Messinger v. Moore*, Civil Action No 2:21-cv-19, 2021 WL 3514747, at *13 (E.D. Va. Aug. 10, 2021).  Plaintiffs must do more than plead there was conduct that deprived them of their rights and that the conduct is attributable to Sheriff Harris. *Brown*, 520 U.S. at 404.  "[Plaintiffs] must also demonstrate that, through its *deliberate conduct*, the municipality was the 'moving force' behind the alleged injury." *Id*. (emphasis in original).  A plaintiff must show that the municipality's decisionmaker "intentionally

13

deprived a plaintiff of a federally protected right…." *Id*. at 405. Liability can only attach if the policy, practice, or custom, has specific deficiencies that will result in an inevitable, specific violation of constitutional rights. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). Here, Plaintiffs have failed to plead such allegations. As discussed above, law enforcement officials are permitted by the Fourth Amendment to compel criminal suspects to identify themselves. Thus, Plaintiffs have failed to plead any deliberate conduct by Sheriff Harris that would inevitably lead to the deprivation of a constitutional right. Even if Sheriff Harris' deputies somehow violated Plaintiffs' constitutional rights in the three instances described, Plaintiffs have failed to plead that Sheriff Harris intentionally instituted a policy, practice, or custom that would lead to the inevitable deprivation of constitutional rights. Training officers to obtain the identity of criminal suspects certainly would not be such a policy, practice, or custom.

Claimants also may not "splatter-paint a picture of scatted violation" in an effort to show an unconstitutional policy, practice, or custom. *Carter*, 164 F.3d at 219. Isolated incidents of alleged constitutional conduct by employees do not create a policy, practice, or custom sufficient to maintain a municipal liability claim under § 1983. *Lytle*, 326 F.3d at 473. A plaintiff must "plead sufficient facts to establish, with precision, that there is a widespread and consistent custom, practice, and/or policy that violates a plaintiff's constitutional rights." *Messinger*, 2021 WL 3514747, at *13. Again, Plaintiffs have failed to do that here. Even if charging suspects who refuse to identify themselves with a crime were unconstitutional, Plaintiffs have only alleged *one* incident where this occurred. For the 2013 Incident, they admit that Robert *presumed* the deputy would charge him with obstruction of justice for failing to provide identification. For the 2021 Incident, Plaintiffs admit that Marc was not charged with anything. Even if all the incidents are considered, three instances over the course of nearly eight years are precisely the type of isolated

14

events that do not create a *widespread and consistent* policy, practice, or custom.

In sum, Plaintiffs have failed to plead facts sufficient to meet the high bar for a municipal liability claim based on policy, practice, or custom. Therefore, the Court must dismiss Plaintiffs' claims against Sheriff Harris with prejudice.

## CONCLUSION

For these reasons, the Court must dismiss the Complaint with prejudice.

**Date:** November 26, 2021

Respectfully submitted,
SHERIFF ROGER L. HARRIS

By: /s/ Michael G. Matheson
William W. Tunner (VSB No. 38358)
Michael G. Matheson (VSB No. 82391)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 698-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
mmatheson@t-mlaw.com

*Counsel for Sheriff Roger L. Harris*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed this 26th day of November, 2021 via the CM/ECF system. I further certify that, this same day, I mailed a copy to the following party:

Marc Stout, *pro se*
Robert Stout, *pro se*
30 Willow Branch Place
Fredericksburg, Virginia 22405
Telephone: (540) 408-9952
formulafocused@gmail.com

        By: /s/ Michael G. Matheson
        William W. Tunner (VSB No. 38358)
        Michael G. Matheson (VSB No. 82391)
        *Thompson*McMullan, P.C.
        100 Shockoe Slip, Third Floor
        Richmond, Virginia 23219
        Telephone: (804) 698-7545
        Facsimile: (804) 780-1813
        wtunner@t-mlaw.com
        mmatheson@t-mlaw.com

        *Counsel for Sheriff Roger L. Harris*