IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARC STOUT & ROBERT STOUT,
    Plaintiffs,

v.                                                                           Civil Action No. 3:21cv468

SHERIFF ROGER L. HARRIS,
    Defendant.

## MEMORANDUM OPINION

Over the last eight years, the plaintiffs, brothers Marc and Robert Stout, have repeatedly clashed with deputies of the Spotsylvania County Sheriff's Department. "Between 2013 and 2021 . . . Spotsylvania County deputies have charged, or threated to charge, . . . the Stout brothers . . . with obstruction of justice for refusing to identify themselves" on several occasions.[1] (ECF No. 16, at 8.) This action arises from those encounters.

According to the plaintiffs, Spotsylvania County deputies routinely command citizens to identify themselves under threat of obstruction charges and then arrest those, like the plaintiffs, who refuse. This practice, the plaintiffs claim, violates the Fourth Amendment. The plaintiffs further contend that Spotsylvania County deputies so commonly employ this practice that it "constitutes [a] custom or usage with the force of law." (*Id.*) The plaintiffs now sue Roger L. Harris, the Spotsylvania County Sherriff ("Sheriff Harris"), pursuant to 42 U.S.C. § 1983, for violating their Fourth Amendment right to be free from unreasonable seizures. Sheriff Harris moves to dismiss the plaintiffs' complaint. (ECF No. 20.)

Reading the complaint in the light most favorable to the plaintiffs and accepting as true all

---

[1] Although the plaintiffs identify three examples of what they deem "forcible identification," the plaintiffs do not assert that Spotsylvania County deputies ever actually threatened to arrest the plaintiffs during one of the incidents. *See infra* pp. 10–11.

well-pleaded allegations therein, the Court finds that the plaintiffs sufficiently plead a claim for municipal liability upon which the Court could grant relief. Thus, the Court will deny Sheriff Harris's motion. (*Id.*)

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

On Christmas Eve of 2013, a Walmart employee asked to see Robert Stout's receipt as he was leaving the store. Stout refused to provide his receipt, and the Walmart employee called the police. When the Spotsylvania County deputies arrived, they "commanded" Stout to identify himself.[2] (ECF No. 16, at 7.) According to Stout, the command carried an *implied* threat: provide your identification or the deputies will arrest you for obstruction of justice. (*Id.*)

Some seven years later, in 2020, Spotsylvania County deputies arrested the plaintiffs and charged them with obstruction of justice after the plaintiffs refused to identify themselves. "The prosecutor dismissed Robert Stout's obstruction of justice charge." (*Id.*) Marc Stout went to trial, and the jury found him not guilty.[3]

Finally, in 2021, Spotsylvania County deputies "arrested Marc Stout for possession of an imitation controlled substance." (ECF No. 16, at 7.) When Marc Stout refused to provide his identification, the deputies threated him by stating, "This time we can I.D. you because it's about drugs. If you don't give us your I.D. it's obstruction." (*Id.*) The deputies released Marc Stout at

---

[2] The complaint does not make clear whether Stout complied with the deputies' command, but the deputies did not arrest him.

[3] "Marc Stout filed a civil-rights lawsuit . . . against the deputy who [forced him to identify himself]." (*Id.*) That lawsuit currently pends before this Court. *See Stout v. Harris*, Civil Action No. 3:21cv399.

the scene and issued no charges.[4] Following these encounters, Marc Stout filed complaints with the Spotsylvania Sheriff's Department, and Sheriff Harris responded that he "understood Marc Stout's complaint[s] to mean that deputies 'weren't being nice.'" (ECF No. 16, at 7; *see also* ECF No. 22, at 6.)

According to the plaintiffs, these three examples demonstrate that "Spotsylvania County deputies engage in a persistent and widespread practice of charging individuals who refuse to identify themselves . . . with obstruction of justice." (ECF No. 16, at 8.) Further, the plaintiffs contend that under Sheriff Harris's command, Spotsylvania County deputies continue this practice despite knowing "that refusing to identify to law-enforcement in Virginia does not satisfy the elements of obstruction of justice."[5] (ECF No. 16, at 8.)

Harris moves to dismiss on the following grounds: (1) forcing or compelling a suspect to identify himself during a lawful investigatory stop does not violate the Fourth Amendment, and thus the plaintiffs fail to state a claim under 42 U.S.C. § 1983; (2) the Virginia statute of limitations

---

[4] "Marc Stout filed a civil-rights lawsuit . . . against the deputies who [forced him to identify himself] during his arrest." (*Id.* at 8.) That lawsuit currently pends before the Alexandria Division of this Court. *See Stout v. Harris et al.*, Civil Action No. 1:21cv493.

[5] The plaintiffs cite to an October 2002 Opinion issued by the Attorney General of Virginia. *See* Crimes and Offenses Generally: Crimes Against the Administration of Justice, Op. Va. Atty's Gen. 02-082 (Oct. 10, 2002). The plaintiffs attached the Opinion to their original complaint. (ECF No. 1-1, at 11–13.) In their amended complaint, the plaintiffs refer to the Opinion as "Exhibit A," but they did not provide a copy of the Opinion as an attachment to the amended complaint.

Judicial inquiry during a motion to dismiss is "generally limited to . . . the complaint itself," but the Court may "also consider documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Because the plaintiffs offer the Opinion as part of their original pleading and its authenticity is not in question, the Court considers the attachment in conjunction with Harris's motion to dismiss. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that, when deciding a motion to dismiss, courts may consider documents attached to a complaint "so long as they are integral to the complaint and authentic").

3

bars this Court's consideration of the "2013 Incident;" and (3) the plaintiffs have failed to plead a claim for municipal liability against Sheriff Harris.[6]

## II. LEGAL STANDARD

### A. Pro Se Litigants

"[A] complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting Fed. R. Civ. Pro. 8(a)(2)). When plaintiffs appear pro se, as the Stouts do here, courts do not expect them to frame legal issues with the same clarity and precision as attorneys. Rather, courts construe pro se complaints generously. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Such generosity is not without limits, however, and district courts need not discern the unexpressed intent of pro se plaintiffs, "conjure up questions [or facts] never squarely presented," or assume the "improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Id.*

### B. Federal Rule of Civil Procedure 12(b)(6)

Harris moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering the motion, a court must accept all allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiffs. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir.

---

[6] Although Sheriff Harris's motion states that the plaintiffs' complaint presents both a "supervisor liability claim" and a "municipal liability claim," the plaintiffs expressly disagree: "The [p]laintiff's official capacity claim is *not a supervisor liability claim*." (ECF No. 22, at 5.) (emphasis added) Because the plaintiffs allege only "a municipal liability claim arising out of an unconstitutional practice that is so persistent and widespread that is constitutes a custom or usage with the force of law," the Court need not address Sheriffs Harris's supervisor liability arguments. (*Id.*)

4

2009) (citing *Edwards*, 178 F.3d at 244). The principle that a court must accept all allegations as true, however, does not extend to legal conclusions. *Ashcroft*, 556 U.S. at 678.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim for relief. *Id.* at 663. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "'Detailed factual allegations' are not required," "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 663, 679 (quoting *Twombly*, 550 U.S. at 555; Fed. R. Civ. Pro. 8(a)(2)). "[W]hen[,] as here, a Rule 12(b)(6) motion [tests] the sufficiency of a civil rights complaint, '[a court] must be especially solicitous of the wrongs alleged.'" *Edwards*, 178 F.3d at 244 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988). Furthermore, a court may not apply a heightened pleading standard in civil cases alleging municipal liability under 42 U.S.C. § 1983. *Leatherman v. Tarrant Cnty. Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993).

### III. DISCUSSION

#### A. Section 1983

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Although § 1983 provides the plaintiffs' cause of action, the statute "'is not itself a source of substantive rights." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Rather, § 1983 provides "a method for

5

vindicating federal rights elsewhere conferred." *Id.* Accordingly, plaintiffs seeking to prevail under § 1983 must show both that (1) they were deprived of a federal statutory or constitutional right; and that (2) the deprivation was committed under color of state law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

The Court must begin its analysis by identifying the precise constitutional or statutory violation that the defendant allegedly committed. *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham*, 490 U.S. at 393–94). Here, the plaintiffs allege that Spotsylvania County deputies, acting under color of state law, unreasonably seized them on multiple occasions in violation of the Fourth Amendment.[7]

### 1. *The Fourth Amendment and Compulsory Identification*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[V]oluntary citizen-police encounters do not implicate the Fourth Amendment." *United States v. Black*, 525 F.3d 359, 364 (4th Cir. 2008). During a voluntary encounter, an investigating officer may ask a person for identification, "[b]ut they may not compel [identification] by threat of criminal sanction." *Wingate v. Fulford*, 987 F.3d 299, 310 (4th Cir. 2021). "[W]hen a police officer, during a voluntary encounter or otherwise, 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot,' the officer may temporarily

---

[7] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Adkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). Here, the plaintiffs assert that Spotsylvania County deputies unlawfully seized them while the deputies were on duty and acting pursuant to their lawful authority as municipal employees and an official Sheriff's Office policy or custom. Accordingly, the Court finds the plaintiffs' pleadings allege a deprivation under color of state law.

6

seize and detain a citizen" without violating the Fourth Amendment. *Black*, 525 F.3d at 364 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

"Beginning with *Terry* . . . the [Supreme] Court has recognized that an officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185 (2004). It is now "well established that an officer may ask a suspect to identify himself during a *Terry* stop." *Id.* at 178.

> Obtaining a suspect's name in the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere.

*Id.* at 186. Recognizing these truths, the Supreme Court explained in *Hiibel* that "[a] state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures." *Id.* at 188.

Here, the plaintiffs do not allege that Spotsylvania County deputies forced the plaintiffs to identify themselves during otherwise voluntary encounters.[8] Nor do they argue the deputies lacked reasonable suspicion during any of the three cited detainments and thus that the detainments were unlawful in and of themselves.[9] Rather, the plaintiffs assert that police may not "compel an

---

[8] The Court construes the plaintiffs' complaint to allege that Spotsylvania deputies were conducting investigatory stops during each of the three encounters. During the 2013 incident, Spotsylvania County deputies responded to a call from Walmart after Robert Stout refused to show a customer receipt while exiting the store. During the 2021 incident, deputies forced Marc Stout to identify himself "after deputies arrested [him] for 'possession of an imitation controlled substance.'" (ECF No. 16, at 7.) Although the plaintiffs provide minimal facts about the 2020 incident, the plaintiffs state that they "refused to identify themselves to deputies upon command *after being detained.*" (*Id.*)

[9] "Assuming deputies had reasonable suspicion to detain or probable cause to arrest the [p]laintiffs, Virginia state law and Spotsylvania County Code didn't prescribe a legal obligation

7

individual to identify themselves during a detention or arrest" by threatening to charge them with a crime in the absence of a valid state law or county ordinance so permitting. (*Id.* at 3.)

Neither Virginia law nor a Spotsylvania County ordinance[10] directly criminalizes a person's refusal to identify themselves to police officers. Such laws, otherwise known as "stop and identify" statutes, exist in other states. "The statutes vary from State to State, but all permit an officer to ask or require a suspect to disclose his identity." *Hiibel*, 542 U.S. at 183.

In *Hiibel*, the Supreme Court expressly "upheld the use of stop and identify statutes within [the *Terry* stop] context." *Wingate*, 987 F.3d at 309. Police officers arrested Hiibel for refusing to identify himself during a lawful investigatory stop. "Hiibel was charged with 'willfully resist[ing], delay[ing] or obstruct[ing] a public officer in discharging or attempting to discharge any legal duty of his office.'" *Hiibel*, 542 U.S. at 181 (citing Nev. Rev. Stat. § 171.123). "The government reasoned that Hiibel had obstructed the officer in carrying out his duties under § 171.123, a Nevada statute that defines the legal rights and duties of a police officer in the context of an investigative stop." *Id.*

Hiibel challenged his conviction under the Fourth Amendment. In deciding his appeal, the Supreme Court first noted that "the Fourth Amendment does not impose obligations on the citizen but instead provides rights against the government. As a result, the Fourth Amendment itself

---

on the [p]laintiffs to identify themselves to deputies under those circumstances." (ECF No. 22, at 3–4.)

[10] Although Spotsylvania County does not have a stop-and-identify ordinance, other Virginia counties do. For example, in *Wingate v. Fulford*, the Fourth Circuit Court of Appeals considered the constitutionality of an arrest under Stafford County Ordinance § 17-7(c) which criminalized a person's refusal to identify himself "at the request of a uniformed law-enforcement officer . . . if the surrounding circumstances are such as to indicate to a reasonable man that the public safety requires such identification." 987 F.3d 299, 309 (4th Cir. 2021).

8

cannot require a suspect to answer questions." *Id.* at 187. The Court then concluded that a legal obligation to disclose your name in the course of a *Terry* stop may arise from state law. *Id.* Finally, the Court reasoned that the Nevada statute at issue was not overbroad or vague.[11]

> [T]he statute does not require a suspect to give the officer a driver's license or any other document. Provided that the suspect either states his name or communicates it to the officer by other means–a choice, we assume, that the suspect may make– the statute is satisfied and no violation occurs. . . . [T]he statutory obligation does not go beyond answering an officer's request to disclose a name.

*Hiibel*, 542 U.S. at 185, 187.

The plaintiffs argue that in the absence of such a state law, they had no legal duty to identify themselves to Spotsylvania County deputies. Virginia does not have a stop-and-identify statute, and failing to identify does not violate Virginia's obstruction statute, Va. Code Ann. § 18.2-460(A).[12] Moreover, Spotsylvania County does not have a stop-and-identify ordinance.[13] The

---

[11] *Cf. Kolender v. Lawson*, 461 U.S. 352 (1983) (striking down a California stop and identify statue on vagueness grounds).

[12] Section 18.2-460(A) of the Virginia obstruction statute criminalizes knowingly obstructing "any law enforcement officer . . . in the performance of his duties . . . or fail[ing] or refus[ing] without just cause to cease such obstruction when requested." Section 18.2-460(B) forbids knowing attempts by threat or force "to intimidate or impede . . . any law-enforcement officer . . . lawfully engaged in his duties." "[O]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult." *Ruckman v. Commonwealth*, 28 Va. App. 428, 429, 505 S.E.2d 388, 389 (1998).

[13] In his reply, Sheriff Harris contends that Spotsylvania County Ordinance § 14–2 authorizes arrest for refusal to identify. That Ordinance reads in part: "No person shall carelessly or willfully interfere with, hinder[,] or obstruct any officer or employee of the county who is engaged in, en route to[,] or returning from the performance of an official duty, whether interference, hindrance[,] or obstruction be by threat, assault[,] or otherwise." Spotsylvania Cnty., Va., Code of Ordinances ch. 14, art. 1, § 14–2 (1980). He further cites to *Roberts v. County of Loudoun*, No. 1575-13-4, 2014 WL 2883912, at *1 (Va. June 24, 2014), "for the proposition that failure to identify can, under certain circumstances, satisfy the elements of the offense of hinderance, a lesser standard than obstruction." (ECF No. 23, at 5–6.) In *Roberts*, the defendant shouted expletives at the police, ordered them to leave her house, and refused to acknowledge their questions or directions as they tried to investigate a domestic assault. 2014 WL 2883912, at *1–

9

plaintiffs further assert that Sheriff Harris and his deputies were at all times aware that refusal to identify does not fall within Virginia's obstruction of justice statute. *See, e.g.*, Crimes and Offenses Generally: Crimes Against the Administration of Justice, Op. Va. Atty's Gen. 02-082 (Oct. 10, 2002) (concluding that "a law-enforcement officer, even when armed with reasonable suspicion that criminal activity may be occurring, may not arrest a suspect for obstruction of justice on the basis that the suspect refuses to identify himself").

Sheriff Harris argues that "[w]hat is reasonable under the Fourth Amendment takes root in the Constitution, not state statutes . . . Thus, it is irrelevant whether Virginia or Spotsylvania County has a stop-and-identify statute." (ECF No. 21, at 9.) Accordingly, Harris asks the Court to conclude that police officers may always compel–under the threat of arrest–a suspect to identify himself pursuant to a lawful *Terry* stop, even in the absence of a state law criminalizing the suspect's refusal. Because "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint" and "does not resolve contests surrounding the facts[ or] the merits of a claim," the Court finds such resolution improper at this juncture. *Repub. Party of N.C. v. Martin*, 980 F.2d 943, 952 (1992). The law on this issue appears unsettled, and the plaintiffs have raised a colorable claim that the Spotsylvania County deputies' actions violated the Fourth Amendment.

### 2. *The 2013 Incident*

The plaintiffs "concede that the 2013 Incident is time-barred."[14] (ECF No. 22, at 2.) To that end, the plaintiffs state that they "are not seeking recovery for the 2013 Incident" but are

---

4. These circumstances bear almost no resemblance to the facts alleged in the plaintiffs' complaint. Further, the Ordinance shares little in common with the state statute approved by the Supreme Court in *Hiibel*.

[14] *See Almond v. Kent*, 495 F.2d 200, 203 (4th Cir. 1972) ("[T]he Virginia two-year period applies to all other rights which may be redressed under § 1983 by the recovery of money damages.").

including it as "evidence of a policy or custom." (*Id.*) Even if the Court could consider the facts alleged in that context, the Court finds that they categorically fail to plead a violation of a constitutional right. The plaintiffs state that Spotsylvania County deputies responded to a Walmart store after Robert Stout refused to provide his customer receipt before leaving the store. When the deputies arrived, Robert Stout merely *presumed* that failure to comply with the deputies request for identification would result in obstruction charges. The plaintiffs do not allege that deputies arrested or threatened to arrest Robert Stout during the 2013 incident. Supreme Court precedent makes clear that "questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel*, 542 U.S. at 186. Accordingly, the Court declines to find, without more, that a deputy's inquiry into Robert Stout's identity during a routine investigatory stop constituted an unreasonable seizure under the Fourth Amendment.

Nevertheless, drawing all reasonable inferences in the plaintiffs' favor, the Court finds that they plead sufficient facts to support a claim that individual Spotsylvania deputies violated the plaintiffs' Fourth Amendment rights in 2020 and 2021 by threatening to arrest or arresting them in the absence of a state law or county ordinance permitting such arrests. This does not end the Court's analysis, however, because the plaintiffs sue Sheriff Harris in his official capacity under a theory of municipal liability.

### *B. Municipal Liability*

"[M]unicipalities and other local government units ... [are] among those persons to whom § 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). An official-capacity suit filed against a government official is an alternative way of pleading an action against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monell* 436 U.S. at 690 n.55). "As long as the government entity receives notice and an opportunity to

respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

As discussed above, the plaintiffs have pled a deprivation of their Fourth Amendment rights. But "[n]ot every deprivation of a constitutional right will lead to municipal liability" under § 1983. *Lytle*, 326 F.3d at 471. "Under *Monell*, municipalities are not liable pursuant to *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship." *Edwards*, 178 F.3d at 244 (emphasis in original) (citing *Monell*, 436 U.S. at 692–94). To prevail against Sheriff Harris in his official capacity, the plaintiffs must show that the Spotsylvania Sheriff's Department caused the deprivation through an official policy or custom. *Id.* A policy or custom for which a municipality may be liable can exist in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle*, 326 F.3d at 471 (internal citations omitted). The plaintiffs assert that Sheriff Harris is liable under either of the final two theories.[15] (ECF No. 16, at 8–9.)

The plaintiffs contend that Sherriff Harris's failure to correctly train his deputies manifests deliberate indifference to the rights of citizens. (*Id.* at 8; *see also* ECF No. 22, at 6–7.) A plaintiff proceeding under such a theory "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow

---

[15] In their responsive pleading, the plaintiffs assert for the first time that Sheriff Harris is "a person with final policymaking authority." (ECF No. 22, at 5–6.) Because the plaintiffs did not present such an argument in their amended complaint, the Court will not consider it here. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *James v. Bailey*, No. 3:15cv519, 2017 WL 193494, at *7 n.7 (E.D. Va. Jan. 17, 2017) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

the decision." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)). "[M]unicipal liability will attach only for those policies or customs having a '*specific* deficiency or deficiencies . . . such as to make the *specific* violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Id.* (emphasis added) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). "The challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." *Id.*

In the alternative, the plaintiffs assert that "Spotsylvania County deputies engage in a persistent and widespread practice of charging individuals who refuse to identify themselves . . . with obstruction of justice." (ECF No. 16, at 8.) "To succeed on this theory [the plaintiffs] must prove the existence of a practice that is widespread, pervasive and 'so permanent and well-settled as to constitute a "custom or usage" with the force of law.'" *Greensboro Pro. Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "Additionally, if the custom grew from within the ranks of employees, [the plaintiffs] may need to make an additional showing that the municipality knew about the custom and 'condoned' it." *Id.* (quoting *Spell*, 824 F.2d at 1391). Such a custom "cannot be established 'by proof alone of the single violation charged.'"[16] *City of Greensboro*, 64 F.3d at 966 (quoting *Spell*, 824 F.2d at 1388).

---

[16] Although it is "well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes," and that "there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice," *Lytle*, 326 F.3d at 473 (citations omitted), "[t]here is no requirement that [a plaintiff] . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation" to survive a Rule 12(b)(6) motion to dismiss. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994).

Viewed through the Rule 12(b)(6) pleading requirements, the plaintiffs' amended complaint alleges the existence of a municipal policy or custom of commanding citizens to identify themselves during police encounters and then threatening to arrest those citizens for obstruction of justice if they do not comply. Further, the complaint alleges that, acting pursuant to that policy, and in violation of the Fourth Amendment, Spotsylvania County deputies arrest citizens, including the plaintiffs, who do not submit to their threats. The complaint claims that Sheriff Harris has been "at all times material the Sheriff of Spotsylvania County." (ECF No. 16, at 4.) From the complaint, the Court reasonably infers that Harris, in his role as Sheriff, failed to correctly train Spotsylvania County deputies, despite his knowledge that refusal to identify does not constitute obstruction of justice in Virginia. Further, the plaintiffs state that Sheriff Harris was aware of his deputies' unconstitutional conduct because the plaintiffs have filed departmental complaints with him, alerting him to their experiences. Here, the alleged policy or custom at issue has the "specific deficiency" of being contrary to established state and federal law. *See Carter*, 164 F.3d at 218.

The complaint also asserts that the Spotsylvania County deputies' practice of unlawfully forcing citizens to identify themselves is so widespread and persistent that it amounts to a custom or usage with the force of law. Finally, the plaintiffs' complaint raises the inference that Sheriff Harris "knew about the custom and 'condoned' it." *City of Greensboro*, 64 F.3d at 966 (quoting *Spell*, 824 F.2d at 1391). Accepting the plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds the plaintiffs plead a claim for municipal liability sufficient to survive a Rule 12(b)(6) motion.

## IV. <u>CONCLUSION</u>

For the reasons outlined above, the Court finds that the plaintiffs sufficiently plead a claim for municipal liability against Sheriff Harris. Accordingly, the Court will deny Sheriff Harris's

motion to dismiss. (ECF No. 20.)

It is so ORDERED.

Let the Clerk mail a copy of this Opinion to all counsel of record and the *pro se* plaintiffs.

Date: 7 February 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

15