IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARC STOUT & ROBERT STOUT,
          Plaintiffs,

v.                                             Civil Action No. 3:21cv468

SHERIFF ROGER L. HARRIS,
          Defendant.

## OPINION

Brothers Marc and Robert Stout (the "Stouts"), the *pro se* plaintiffs, have had a string of encounters with Spotsylvania County Sheriff's deputies over the years. The Stouts claim that, during those encounters, the deputies violated their Fourth Amendment rights by arresting or threatening to arrest them for obstruction of justice after the Stouts refused to identify themselves. The Stouts sued Spotsylvania County Sheriff Roger L. Harris over these alleged violations by his deputies. The parties have now filed cross-motions for summary judgment. (ECF Nos. 74, 78.) Because the evidence raises genuine disputes of material fact surrounding a possible policy that may have caused Marc Stout's unlawful arrest in one of the three alleged incidents, the Court will deny the Stouts' motion for summary judgment and will grant in part and deny in part the defendant's motion.

## I. BACKGROUND

The Stouts allege three incidents in which they claim deputies violated their rights. On Christmas Eve in 2013 (the "2013 Incident"), a Walmart employee stopped Robert Stout and asked for his receipt. (ECF No. 79-1, at 00:01–01:33.) When he refused, the Walmart employee called the police, and deputies arrived. (ECF No. 74, at 3–4; ECF No. 79, at 2.) One deputy repeatedly asked Robert Stout for his identification, and after initially refusing, Robert Stout relented and

handed it over. (ECF No. 79-1.) The deputy never explicitly threatened to arrest him for obstruction of justice or any other crime. (*See id.*)

In 2020, Spotsylvania County Sheriff's deputies, including Sergeant Daniel Harris, confronted the Stouts outside the Spotsylvania County Courthouse (the "2020 Incident").[1] Initially Sergeant Harris told the Stouts they could not walk in the road, but as Sergeant Harris began to leave, Marc Stout retorted, "I'll tell you what, don't violate my rights, and I won't hurt you, how 'bout that?" (ECF No. 79-3, at 01:05.) Harris replied, "Are you threatening me?" and demanded Marc Stout's identification. (*Id.* at 01:08–01:45.) Marc Stout refused, saying the deputies had no reasonable suspicion to detain him, but Harris insisted he did because Stout "threatened" him. (*Id.* at 01:45–02:00.)

The two began arguing, and more deputies arrived. (*Id.* at 02:00.) Throughout their argument, Harris asked Marc Stout for his identification several times. (*Id.* at 01:52, 01:55, 02:29, 02:31, 03:34, 03:36, 03:39, 04:17, 04:24, 04:46, 04:50, 05:14.) Marc Stout refused each time, claiming Harris could not detain him and threatening to sue Harris. (*Id.*) After Marc Stout refused Harris's twelfth demand for identification, Harris began arresting him. (*Id.* at 05:14–05:47.) As the deputies handcuffed Marc Stout, Harris asked him if he would prefer to give them his identification, but he again refused. (*Id.*)

---

[1] Each brother filed a lawsuit arising from the 2020 Incident. *See Marc Stout v. First Sergeant Dan Harris*, Civ. Case No. 3:21cv399; *Robert Stout v. Sergeant Jeffries*, Civ. Case No. 3:21cv575. In Marc Stout's case, the parties settled after the Court denied the defendants' motion to dismiss. *See Stout v. Harris*, 2021 WL 5756382, at *6 (E.D. Va. Dec. 3, 2021). In Robert Stout's case, the Court granted summary judgment in favor of the defendant deputies because they had probable cause to arrest Robert Stout for unlawfully walking in the road, and they did not use unreasonable force in doing so. *See Stout v. Jeffries*, 2024 WL 915560, at *5 (E.D. Va. Mar. 4, 2024).

As the deputies arrested Marc Stout, another deputy approached Robert Stout—who had been recording the incident and walking in the road—and arrested him too. (*Id.* at 05:57; *see, e.g.*, ECF No. 39-4, at 03:46–05:00.) The deputies arrested both brothers for obstruction of justice based on their failures to identify themselves. (ECF No. 79, at 3.) The deputies also charged Marc Stout with assault of a police officer. (*Id.*)

Finally, in 2021, deputies confronted Marc Stout after he dropped small, crumpled bags of white powder at the Spotsylvania mall (the "2021 Incident"). (ECF No. 79-9.)[2] The first deputy to arrive confronted Marc Stout in the parking lot and repeatedly asked who he was and what he had been doing in the mall. (*Id.* at 00:35.) Stout refused to identify himself. Eventually the deputies arrested Marc Stout. (*Id.* at 08:23–09:07.) As the deputies tested the powder, one deputy interrogated Marc Stout. (ECF No. 79-10, at 08:50–14:23.) Marc Stout eventually identified himself, and after the deputies determined the powder was baking soda, they released him without charging him. (*Id.* at 12:51–14:23.)

## II. DISCUSSION[3]

### *A. The Right at Issue*

The Court begins by identifying the right that the Stouts claim the deputies violated. *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). The Stouts allege that, on three occasions,

---

[2] Marc Stout sued deputies involved in the 2021 Incident. *Marc J. Stout v. First Sergeant Harris*, Civil Case No. 3:22cv437. The Court granted summary judgment in favor of the defendants, finding that they had probable cause to arrest Marc Stout. *Id.*, ECF No. 48.

[3] The Court may award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A fact is material if it might affect the outcome of the suit under the governing law.' A dispute is 'genuine' if 'a reasonable jury could return a verdict for the non-moving party.'" *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022) (citation omitted) (first quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013); and then quoting *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018)).

3

deputies violated their Fourth Amendment rights by unlawfully seizing them. Specifically, they argue that the deputies arrested them or threatened to arrest them for obstruction of justice, even though the obstruction statute does not criminalize a refusal to identify oneself. (*See* ECF No. 16 ("Spotsylvania County deputies have charged, or threatened to charge, multiple times, the Stout brothers, . . . with obstruction of justice for refusing to identify themselves to deputies.").)

"[Q]uestions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 186 (2004). Even so, "the Fourth Amendment does not impose obligations on the citizen but instead provides rights against the government. As a result, the Fourth Amendment itself cannot require a suspect to answer questions" during a *Terry* stop. *Id.* at 187. Yet many states have statutes that require people to identify themselves during *Terry* stops—so-called "stop-and-identify" statutes. *Id.*[4] Nonetheless, "a valid investigatory stop, supported by *Terry*-level suspicion, is a constitutional prerequisite to enforcing stop and identify statutes." *Wingate v. Fulford*, 987 F.3d 299, 310 (4th Cir. 2021).[5]

Virginia has no stop-and-identify statute. The Sheriff, however, argues that Virginia's obstruction-of-justice statute, Va. Code Ann. § 18.2-460(A), acts as a stop-and-identify statute by

---

[4] Even when a stop-and-identify statute applies to a *Terry* stop, the Fourth Amendment still imposes limits on police officers' ability to compel an identification. *Wingate v. Fulford*, 987 F.3d 299, 310 (4th Cir. 2021) ("Because identity requests implicate the same interests as *Terry* stops, they are also subject to the same constitutional limits."). The police "may not arrest a suspect for failure to identify himself if the identification request is not reasonably related to the circumstances justifying the stop." *Hiibel*, 542 U.S. at 187. "Nor may the request impermissibly extend the stop, suggesting 'an effort to obtain an arrest for failure to identify after a *Terry* stop yielded insufficient evidence.'" *Wingate*, 987 F.3d at 310 (quoting *Hiibel*, 542 U.S. at 189).

[5] *See also United States v. Landeros*, 913 F.3d 862, 869–70 (9th Cir. 2019) (holding that officers had no reasonable suspicion to extend stop and no justification to demand defendant's identification); *Johnson v. Nocco*, 91 F.4th 1114, 1126 (11th Cir. 2024) (Wilson, J., dissenting) ("The Supreme Court has consistently held that law enforcement officers cannot require, by threat of arrest, that an individual identify himself absent reasonable suspicion of wrongdoing . . . .").

4

implicitly imposing an obligation on a person to identify himself to police during a lawful stop. But as the Court has already held, the obstruction statute does not apply that broadly. *Stout v. Harris*, 2022 WL 363873, at *5 (E.D. Va. Feb. 7, 2022). "[O]bstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult." *Ruckman v. Commonwealth*, 28 Va. App. 428, 429, 505 S.E.2d 388, 398 (1998). Instead, to commit obstruction, a person must "prevent the officer from performing his duty." *See Jordan v. Commonwealth*, 273 Va. 639, 648, 643 S.E.2d 166, 648 (2007) (quoting *Jones v. Commonwealth*, 141 Va. 471, 478–79, 126 S.E. 74, 77 (1925)).[6] Courts have even held that "a suspect's flight, alone, does not constitute obstruction of a law-enforcement officer." *Lucas v. Commonwealth*, 976 S.E.2d. 220, 225, 75 Va. App. 334, 345 (2022).

Repeated requests to identify oneself, like those involved here, show only a failure to "cooperate fully with an officer." *See Ruckman*, 28 Va. App. at 429, 505 S.E.2d at 398. Such refusals simply "oppose" an officer's commands. *See Jordan*, 273 Va. at 648, 643 S.E.2d at 648 (quoting *Jones*, 141 Va. at 478–79, 126 S.E. at 77). Accordingly, simple refusals to identify do not amount to obstruction. *See, e.g., Joseph v. Moore*, 2023 WL 6366572, at *10 (W.D. Va. Sept. 28, 2023) (holding that the plaintiff's refusals to provide his identification did not constitute obstruction). Indeed, the Virginia Attorney General has recognized that "a law-enforcement officer conducting a lawful investigative stop may not arrest a suspect for obstruction of justice

---

[6] While the obstruction statute prohibits obstructing a police officer "in the performance of his duties," Va. Code Ann. § 18.2-460(A), it does not expand a police officer's duty beyond what the Fourth Amendment allows. *See Maldonado v. Commonwealth*, 70 Va. App. 554, 569, 829 S.E.2d 570, 577 (2019) ("[The defendant's] conduct did not prevent or impede [the officers] from performing their duty since their 'duty' to investigate any criminal offense was necessarily circumscribed by the Fourth Amendment's constitutional prohibition against a warrantless entry to a private home without consent or a judicially authorized warrant."). And as explained above, the Fourth Amendment does not impose an obligation to identify oneself, even during a *Terry* stop. *Hiibel*, 542 U.S. at 187.

5

under § 18.2-460(A), when the suspect refuses to identify himself to the officer." Crimes and Offenses Generally: Crimes Against the Administration of Justice, Op. Va. Att'y Gen. 02-082, 2002 WL 31777454, at *1 (Oct. 10, 2002). Because the obstruction statute does not prohibit simple refusals to identify oneself, arresting a person for that reason—without any other source of probable cause—violates the Fourth Amendment.[7]

### B. The Constitutional Violation

The Court must next determine whether the Stouts have established a violation of their rights. The Stouts have pointed to three incidents in which they claim Spotsylvania County deputies violated their Fourth Amendment rights by threatening to arrest or actually arresting them for obstruction of justice after they refused to identify themselves.

With respect to the 2013 Incident, the Court has already held that the Stouts have "categorically fail[ed] to plead a violation of a constitutional right" because the deputies never "arrested or threated to arrest" Robert Stout. *Stout*, 2022 WL 363873, at *6. Discovery has not changed that conclusion. The Stouts claim that the deputies strongly suggested that if Robert Stout did not hand over his identification, then the deputies would charge him with obstruction. But nothing the deputies said indicated they would arrest him. They simply asked Robert Stout for his identification. And "questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops." *Hiibel*, 542 U.S. at 186. "Robert Stout merely *presumed* that failure to comply

---

[7] The Sheriff claims Spotsylvania County Ordinance § 14-2, the County's obstruction ordinance, also requires a person to identify himself during a *Terry* stop. Like the obstruction statute, which says a person cannot "obstruct[]" a police officer's duties, the obstruction ordinance says a person cannot "carelessly or willfully interfere with, hinder[,] or obstruct" a police officer's duties. *Compare* Spotsylvania Cnty., Code of Ordinances ch. 14, art. 1, § 14-2 (1980), *with* Va. Code Ann. § 18.2-460(A). The obstruction ordinance essentially tracks the statute's language, and regardless, the "[o]rdinance shares little in common with the state statute approved by the Supreme Court in *Hiibel*." *Stout*, 2022 WL 363873, at *6 n.13.

with the deputies['] request for identification would result in obstruction charges." *Stout*, 2022 WL 363873, at *6. Accordingly, without an arrest or threat of arrest for obstruction, the 2013 Incident does not demonstrate a constitutional violation.

Nor does the 2021 Incident demonstrate a constitutional violation. In the 2021 Incident, the deputies arrested Marc Stout after he dropped bags of white powder at a mall. As the Court previously held, those circumstances gave the deputies probable cause to arrest him. *Marc J. Stout v. First Sergeant Harris*, Civil Case No. 3:22cv437, ECF No. 48. The deputies arrested Marc Stout for possible drug-related offenses—not for obstruction for failure to identify himself. Thus, the 2021 Incident does not illustrate the kind of constitutional violation the Stouts allege in their *Monell* claim either.

That leaves the 2020 Incident. The undisputed facts of that Incident show the deputies violated Marc Stout's rights by unlawfully arresting him. The deputies approached the Stouts during a voluntary encounter. During that encounter, Sergeant Harris took Marc Stout's taunt as a threat and thus claimed he had reasonable suspicion to detain him and ask for his identification. Harris demanded Marc Stout's identification, and Stout refused. After making twelve demands for identification, Harris arrested Marc Stout for obstruction of justice. But as explained above, the obstruction statute does not generally require a person to identify himself to police. Without more, refusals to identify oneself do not amount to obstruction. Marc Stout never physically obstructed the deputies or did anything else to stop them from performing their duties. Even assuming the deputies somehow had reasonable suspicion to detain Marc Stout, they could not

7

arrest him for obstruction for refusing to identify himself.[8] And the Sheriff has not pointed to any additional probable cause justifying Marc Stout's arrest.

Of course, when a police officer makes a reasonable mistake of law when detaining a person, that mistake does not invalidate the stop. *Heien v. North Carolina*, 574 U.S. 54, 67 (2014). That principle, however, does not excuse the arrest here. Virginia courts have long held that obstruction only occurs when a person "prevent[s] the officer from performing his duty." *See Jordan*, 273 Va. at 648, 643 S.E.2d at 648 (*Jones*, 141 Va. at 478–79, 126 S.E. at 77). A reasonable officer should know that simply "fail[ing] to cooperate fully with an officer," including a refusal to identify, does not rise to the level of obstruction of justice. *See Ruckman*, 28 Va. App. at 429, 505 S.E.2d at 398. Indeed, if running away from police does not constitute obstruction, a reasonable officer should know that neither does a simple refusal to identify oneself. *Cf. Lucas*, 75 Va. App. at 345; 976 S.E.2d. at 225. Accordingly, under well-established law, arresting someone for failing to identify does not qualify as a reasonable mistake of law.

### C. Monell *Liability*

Having determined that the Stouts have established that Spotsylvania deputies violated Marc Stout's rights, the Court must next determine whether the Stouts can hold the Sheriff liable

---

[8] The Sheriff claims Marc Stout's "threat" gave Sergeant Harris reasonable suspicion to detain him. In Marc Stout's related case against Sergeant Harris, the Court held at the motion-to-dismiss stage that Marc Stout's comment did not constitute a "true threat" punishable by statute. *See Stout*, 2021 WL 5756382, at *6. The video evidence here only confirms that conclusion.

Even if the deputies had reasonable suspicion, and even if the obstruction statute imposed some obligation on Marc Stout to answer, the deputies went beyond what *Hiibel* allows. Harris demanded Marc Stout's identification a dozen times and eventually arrested him for refusing to provide it, citing the obstruction statute. Harris's insistence demonstrates "an effort to obtain an arrest for failure to identify after [an ostensible] *Terry* stop yielded insufficient evidence." *Hiibel*, 542 U.S. at 189. Moreover, the demand for identification bore little relation to determining whether Marc Stout posed a threat to Harris. *See id.* at 187.

8

for that violation. A plaintiff cannot hold a municipality—or in this case, the Sheriff—liable for violations of his civil rights under traditional respondeat superior principles. Instead, a plaintiff must establish liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* requires a plaintiff must show: (1) the existence of a "specific 'policy' or custom'"; (2) attribution of "the policy and fault for its creation to the municipality"; and (3) a link showing that the policy or custom proximately caused a specific violation of the plaintiff's civil rights. *Spell v. McDaniel*, 824 F.2d 1380, 1398 (4th Cir. 1987).

> For the first element, a plaintiff can prove that a policy or custom exists in four ways:
>
> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).[9] The "strict *Monell* test" requires that the municipality have "some level of notice" of the violation and, therefore, imposes a high burden on the plaintiff to prove causation and attribution. *Est. of Jones by Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020). In doing so, a plaintiff typically must show more than a "single violation," *Spell*, 824 F.2d at 1387–88, or even more than "scattershot accusations of unrelated constitutional violations" or "isolated incidents," *Carter*, 164 F.3d at 218, 220.

But when the municipality has an express unconstitutional policy, "inferences of culpability and causation are easy, for they follow directly from the municipality's intentional

---

[9] The Court construes the Stouts' *pro se* complaint liberally, interpreting it to allege *Monell* liability generally, including all four ways of proving a policy or custom. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (describing a court's duty to construe *pro se* plaintiffs' civil rights complaints generously).

9

decision to adopt the unconstitutional policy or custom or to take particular action." *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020). Accordingly, when the plaintiff can show the existence of an express policy, the plaintiff need not have "independent proof" of a pattern of violations to establish causation and attribution. *Spell*, 824 F.2d at 1387.

Only the 2020 Incident shows a constitutional violation. But discovery has revealed that "the Spotsylvania County deputies are trained to believe that deputies may arrest, or threaten to arrest, individuals for obstruction of justice for refusing to identify if deputies harbor reasonable suspicion to detain, or probable cause to arrest, the refusing individual." (ECF No. 74-1, at 25.)

Although ambiguous, this admission—taken together with the 2020 Incident—suggests the existence of a directive to arrest or threaten to arrest people during *Terry* stops for failing to identify themselves under a statute that allows no such thing. This admission sheds light on the 2020 Incident. There, Sergeant Harris claimed to have reasonable suspicion to detain Marc Stout, insisted that Stout identify himself, and then arrested Stout for obstruction when he refused to comply. Perhaps he did so because that is how he had been trained. As explained, however, the obstruction statute does not criminalize a refusal to identify during a *Terry* stop, and thus such training would prompt deputies to violate a person's Fourth Amendment rights.

Viewing the facts in the light most favorable to each party still leaves many questions unanswered, including the true extent of this training, who established the training, and whether the training proximately caused Marc Stout's arrest. Those questions present genuine disputes of material fact better left to a jury. *See Dean v. Jones*, 984 F.3d 295, 301–02 (2021).

### III. <u>CONCLUSION</u>

Because the undisputed facts do not establish that the Stouts suffered constitutional violations in the 2013 and 2021 Incidents, the Court will grant the Sheriff's motion for summary

judgment as to those Incidents and will deny the Stouts' motion. As to the 2020 Incident, however, the Court finds that material disputes of fact exist regarding the Sheriff's liability for Marc Stout's constitutional violations. Accordingly, the Court will deny both motions to that extent and allow the case to proceed to trial on the 2020 Incident only.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and the *pro se* plaintiffs.

Date: 18 March 2024
Richmond, VA

/s/ John A. Gibney, Jr.
Senior United States District Judge